**Filed**

ADR

OCT 2 4 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Paid
IFP

(5)

1  JOSEPH CUVIELLO
   P.O. Box 2834
2  Redwood City, CA 94064
   Telephone: 650-654-9955
3  Email: pcuvie@gmail.com

4  IN PRO SE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CV 13-04951 PSG

8  JOSEPH CUVIELLO, individually,

9       Plaintiff,

10      vs.

11  FELD ENTERTAINMENT INC., (dba
    RINGLING BROS. AND BARNUM &
12  BAILEY CIRCUS), RINGLING BROS.
    DIRECTOR OF CIRCUS OPERATIONS
13  MIKE STUART, RINGLING BROS.
    BLUE UNIT ASSISTANT GENERAL
14  MANAGER DAVID BAILEY, JAMES
    MCMANIS, RUBY KAZI, GREGORY
15  WARD, and TYLER ATKINSON, Jointly
    and Severally
16
17      Defendants.
18

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1. Malicious Prosecution

2. 28 U.S.C. § 1983 Violation of First Amendment rights

**JURY TRIAL DEMANDED**

21  Plaintiffs hereby allege as follows:

**JURISDICTION AND VENUE**

24      1.      This is a civil suit seeking damages for Malicious Prosecution and violation of

25  First Amendment rights.

26      2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 This Court has

27  subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), and the

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  aforementioned statutory and constitutional provisions/ Plaintiffs further invoke the

2  supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 13 67 to hear and decide claims

3  arising under state law.

4      3.      This suit further seeks the imposition punitive damages and reasonable attorney's

5  fees against all appropriate defendants as permitted under law.

6      4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a

7  substantial part of the events or omissions giving rise to the claims occurred in the City of

8  Oakland, and San Jose, California.

## PARTIES

9

10

11      5.      PLAINTIFF JOSEPH CUVIELLO is a resident of the State of California.

12      6.      Upon information and belief, DEFENDANT FELD ENTERTAINMENT

13  INC., is a business entity, form unknown, with its principal place of business in Vienna,

14  Virginia.

15      7.      Upon information and belief, DEFENDANT FELD ENTERTAINMENT

16  INC., owns and produces Ringling Bros. and Barnum & Bailey Circus.

17      8.      Upon information and belief, DEFENDANT MIKE STUART was an Operations

18  Manager for Ringling Bros. and Barnum & Bailey Circus.

19      9.      Upon information and belief, DEFENDANT DAVID BAILEY was an Assistant

20  General Manager Manager for Ringling Bros. and Barnum & Bailey Circus.

21      10.     Upon information and belief, DEFENDANT JAMES MCMANIS is an attorney

22  hired by DEFENDANT FELD ENTERTAINMENT.

23      11.     Upon information and belief, DEFENDANT RUBY KAZI is an attorney hired

24  by DEFENDANT FELD ENTERTAINMENT.

25      12.     Upon information and belief, DEFENDANT GREGORY WARD is an attorney

26  hired by DEFENDANT FELD ENTERTAINMENT.

27

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1

13.     Upon information and belief, DEFENDANT TYLER ATKINSON is an attorney hired by DEFENDANT FELD ENTERTAINMENT.

### STATEMENT OF FACTS

14.     PLAINTIFF CUVIELLO is a member of Humanity Through Education, a San Francisco Bay Area grassroots group dedicated to the humane treatment of animals and educating the public about the abuse and mistreatment of animals in circuses. Plaintiff's speech and association includes holding signs and banners and offering to the public informational leaflets about the condition and treatment of animals kept by circuses, including but not limited to the Ringling Bros. and Barnum & Bailey Circus. Plaintiff's speech also includes videotaping said treatment of animals used by circuses. Plaintiff uses his videotape to educate the public, and provide news media information about the abuse and mistreatment of animals by circuses.

15.     PLAINTIFF CUVIELLO's speech and association is on matters of great public concern locally, nationally, and internationally - the abuse and mistreatment of animals, including but not limited to endangered species, lions, and Asian elephants - by circuses and other "entertainment" entities.

16.     PLAINTIFF CUVIELLO has documented many instances of animal abuse and mistreatment committed by circuses over the years. Plaintiff uses the evidence he documents on video to speak out against these abuses of animals, and to associate with others for the purpose of expressing their views and educating people about the issue of abuse and mistreatment of animals used in circuses.

17.     Additionally, Humanity Through Education uses videos taken by its members to speak to the media and provide news and law enforcement organizations with information about the abuse and mistreatment of animals.

18.     PLAINTIFF CUVIELLO's videotapes have been used and broadcast by local and national news media, including but not limited to NBC Channel 3 News, KGO TV, CBS

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1   Channel 5 News, ABC 7 News and KRON 4 News in addition to news organizations in other

2   markets, such as San Diego and Connecticut.

3        19.    Humanity Through Education videotapes are also used and presented on the

4   Internet.

5        20.    PLAINTIFF CUVIELLO has been organizing demonstrations against the

6   Ringling Bros.' Circus, leafleting the Circus' patrons and videotaping the Circus' treatment of

7   animals since 1988 and 1989 respectively.

8        21.    PLAINTIFF CUVIELLO, along with other animal rights activists including

9   other members of Humanity Through Education, has videotaped the treatment of animals by

10   Ringling Bros. Circus in numerous California cities including San Jose, Oakland, Daly City,

11   Sacramento, Stockton, San Diego, Fresno and Los Angeles.

12        22.    PLAINTIFF CUVIELLO, along with other animal rights activists including

13   other members of Humanity Through Education, has also videotaped the treatment of animals

14   used by Ringling Bros. Circus in Reno, Nevada; and Plaintiff has videotaped the treatment of

15   animals by Ringling Bros. Circus in Rosemont, Illinois.

16        23.    For over 20 years PLAINTIFF CUVIELLO has been leafleting and

17   videotaping at Ringling Bros. Circus and in all that time Plaintiff has never been accused of

18   being violent towards any employee of DEFENDANT FELD ENTERTAINEMNT INC.

19        24.    Ringling Bros. Circus performs annually in the San Francisco Bay Area in

20   August and September, and typically performs one evening show on the weekdays and two to

21   three shows on each weekend day.

22        24    The Circus arrives by railroad in each city two to three days before the opening

23   night show; employees unload the elephants and horses from the train and walk them down the

24   public streets to the arenas where they perform. After the last scheduled performance at the

25   arenas the Circus employees walk the elephants and horses back to the train.

26        25    Every year the Circus sets-up an "animal compound" area where they keep the

27   animals when not performing. Typically this area is in a portion of the arenas' outdoor parking

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  lots; in some years, at the Cow Palace in Daly City, California, the compound area was in the

2  building. Starting in the mid-1990s the Circus erected a six-foot high chain linked fence around

3  the compound area.

4       26     Every year PLAINTIFF CUVIELLO, and those in concert with him, offer

5  informational leaflets to patrons of every Ringling Bros. Circus performance in the Bay Area.

6  PLAINTIFF CUVIELLO, and others, videotape the treatment and living conditions of animals

7  used by the Circus – PLAINTIFF CUVIELLO, and those in concert with him, videotape the

8  animals before, during and after the shows. In addition, PLAINTIFF CUVIELLO, and those in

9  concert, videotape the living conditions and treatment of the animals while on they are on the

10  train, being loaded and unloaded from the train and being walked to and from the arenas.

11       27     PLAINTIFF CUVIELLO, and those in concert, have also videotaped the

12  treatment and living conditions of the animals, at the arenas on the weekdays when there are no

13  scheduled performances.

14       28     For years, in the course of his free speech activities during the Ringling Bros.

15  Circus engagements, PLAINTIFF CUVIELLO, and those in concert, has been told by Circus

16  personnel, arena security personnel and local police officers, hired by the arena management

17  companies to supplement security at a pay rate which is time and a half of their normal salary,

18  that PLAINTIFF CUVIELLO, and those in concert, is: (1) not allowed to videotape because the

19  Circus doesn't like it; and (2) not allowed to access certain public areas for videotaping purposes

20  because the "show people" don't want him in these areas. During these times PLAINTIFF

21  CUVIELLO has been harassed, through physical assaults and attempts to block Plaintiff's

22  camera, by both Circus personnel and arena security while attempting to videotape the animals.

23       29     PLAINTIFF CUVIELLO has also been illegally threatened with arrest and

24  illegally arrested by arena management companies and local police officers. Accordingly,

25  PLAINTIFF CUVIELLO has filed lawsuits for the violation of his free speech rights against the

26  arena management companies, the individual police officers and the municipalities, including the

27  City of San Jose, the City of Stockton and the City of Oakland.

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1      30     Plaintiff's San Jose Arena lawsuit was adjudicated in Plaintiff's favor and a

2  permanent injunction was issued to protect and uphold Plaintiff's Free Speech Rights – including

3  videotaping the treatment and conditions of the animals used by the Circus. DEFENDANT

4  FELD ENTERTAINMENT, through their attorney JAMES MCMANIS, without formally

5  intervening was allowed by the court to participate in the injunctive relief phase of Plaintiff's

6  San Jose lawsuit. When Plaintiff appealed the injunctive relief granted him by the court

7  DEFENDANT FELD ENTERTAINMENT, through their attorney JAMES MCMANIS,

8  formally intervened and fought vehemently to prevent the court from granted Plaintiff injunctive

9  relief based on a stipulation between Plaintiff and defendant HP Pavilion Management that

10  would allow Plaintiff to leaflet next to the entrance to Ringling Bros. Circus' animal compound.

11  There are no provisions in this permanent injunction placing prohibitions on any of Plaintiff's

12  Free Speech activities, including Plaintiff's videotaping activities.

13      31     Plaintiff also reached a settlement in both his lawsuits against the City of Stockton

14  and the City of Oakland which have an agreed upon permanent injunction protecting his free

15  speech rights, specifically his right to videotape the Circus' treatment of the animals at the

16  Oakland Arena and the Stockton Arena.

17      32     DEFENDANT FELD ENTERTAINMENT, through their attorneys JAMES

18  MCMANIS and RUBY KAZI, formally intervened in Plaintiff's Oakland lawsuit and again

19  vehemently fought to obstruct the stipulated injunctive relief between Plaintiff and defendant

20  SMG, the manager of the Oakland Arena, and the City of Oakland.

21      33     Due to his consistent presence during the Ringling Bros. Circus' Bay Area

22  engagements Plaintiff is not only well known by Ringling Bros. Circus' management and

23  employees, Circus management identifies Plaintiff to their employees before the Circus arrives

24  in the San Francisco Bay Area.

25      34     During the discovery process and trial testimony in his lawsuits PLAINTIFF

26  CUVIELLO learned that Ringling Bros. Circus targets him and his partner Deniz Bolbol by

27  specifically identifying him and his partner to their employees before they enter into California.

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

5

35   PLAINTIFF CUVIELLO has learned that Ringling intentionally takes action to block his view of the animals so that he won't be able to document the treatment and living conditions of the animals. It is the "policy" and "practice" of Ringling Bros. Circus to intentionally interfere with Plaintiff's free speech rights for the purpose of chilling Plaintiff in the exercise of his constitutionally-protected rights.

36   PLAINTIFF CUVIELLO has learned that Ringling Bros. Circus would meet, prior to their engagements, with arena Management companies and local police officers. During these meetings Ringling Bros. Circus would specifically identify PLAINTIFF CUVIELLO and his partner Deniz Bolbol and tell the police they were provocative and confrontational and discuss restricting free speech access of PLAINTIFF CUVIELLO, and those in concert. Based on these meetings, the Management companies would work with the local police and municipalities to illegally block off public fora areas to demonstrators. The arena managements would discuss with the local police, and Ringling Bros. Circus, arresting PLAINTIFF CUVIELLO, through the process of a citizen's arrest on the part of the Arena Management, if PLAINTIFF CUVIELLO, or those in concert, attempted to access public fora areas that were blocked off.

37   Every year the Circus has used many different tactics to harass and interfere with PLAINTIFF CUVIELLO, and other activists, while he is attempting to videotape the Circus' treatment of the animals, including intentionally blocking his view, spraying firehoses at him and his camera, shining laser pointers into his eyes and camera lens, and swatting at his camera with long poles mounted with a blown-up photos of MR. CUVIELLO and other activists.

38   Beginning in 2007, and to the present, in every city at the unloading and loading of animals from the Circus train, Circus employees hold a long rope alongside the elephants and horses as they are walked down the public streets to and from the arenas. The Circus employees who hold this rope have used this rope to assault, batter, harass and interfere with PLAINTIFF CUVIELLO's, and other activists', attempts to videotape the treatment of the animals during these walks by: (1) wrapping or pushing the rope around PLAINTIFF CUVIELLO and the other

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

6

1  activists and their monopod poles, which hold their cameras ; (2) walking up onto the public

2  sidewalks where PLAINTIFF CUVIELLO is walking and pushing the rope against Plaintiff and

3  other activists and their monopod poles; and (3) hooking the rope under PLAINTIFF

4  CUVIELLO's and other activists' monopods, thereby moving the monopods and interfering with

5  Plaintiff's and other activists' videotaping.

6       39    The Circus' assault, battering and harassment of PLAINTIFF CUVIELLO with

7  the rope obstructs PLAINTIFF CUVIELLO's free use of the public sidewalks and causes

8  Plaintiff to forego videotaping the Circus' treatment of the animals and redirect his attention on:

9  (1) monitoring the actions of the employees holding the rope, with regards to himself and other

10  activists; and (2) repeatedly telling the Circus employees to stop assaulting and harassing him

11  with the rope.

12       40    The Circus has used this rope in the aforementioned manner to assault, batter,

13  harass and interfere with PLAINTIFF CUVIELLO's free use of the public streets and free

14  speech rights on numerous occasions, including September 16, 2007 in Stockton, California;

15  August 25, 2009 in Sacramento California; August 30, 2011 in Daly City, California, where the

16  rope holders were under the supervision of DEFENDANT DAVID BAILEY, and PLAINTIFF

17  CUVIELLO was told by a Ringling employee that the Circus had a permit to control the

18  sidewalk; and August 7, 2012 in Oakland California, where the rope holders were under the

19  supervision of DEFENDANTS DAVID BAILEY and MIKE STUART.

20       41    On August 12, 2008, in Oakland, California, the Circus, under the supervision of

21  DEFENDANT MIKE STUART, used the ropes to assault and batter Plaintiff's partner Deniz

22  Bolbol while she was walking on the public sidewalk videotaping the animal walk.

23       42    On August 16, 2011, in San Jose, California, Plaintiff witnessed Ringling rope

24  holders wrapping the rope around activist Mark Ennis while under the supervision of

25  DEFENDANTS DAVID BAILEY and MIKE STUART.

26       43    On August 19, 2011, based on DEFENDANT FELD's employees' behavior with

27  the ropes, firehoses, laser pointers and long poles mounted with photos of Plaintiff, Plaintiff and

28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

7

1    his partner Deniz Bolbol filed, in State court, a lawsuit against DEFENDANT FELD for

2    violation of their rights by violence, threats, intimidation or coercion. DEFENDANT FELD

3    removed the case to federal court.

4         44     On July 8, 2012 PLAINTIFF CUVIELLO travelled to the Selland Arena in

5    Fresno, California to videotape Ringling Bros. Circus' treatment of the animals they use. While

6    Plaintiff Cuviello and fellow activist Mark Ennis were standing on a public sidewalk videotaping

7    into the backstage area at the arena circus employees threw a plastic bottle and two wooden

8    sticks at Plaintiff and Mr. Ennis. Although the thrown bottle and sticks did not hit PLAINTIFF

9    CUVIELLO or his camera one of the sticks did hit Mr. Ennis's camera. Both sticks landed in the

10   public street where cars were driving by.

11        45     These Circus employees were under the supervision of DEFENDANTS MIKE

12   STUART and DAVID BAILEY.

13        46     The conduct by Defendants caused Plaintiff to fear for his safety and the safety of

14   his property. Defendants' actions created a dangerous situation for Plaintiff, those in concert and

15   anyone walking by on the public sidewalk or driving by on the public street.

16        47     On August 7, 2012 PLAINTIFF CUVIELLO travelled to Oakland, California to

17   videotape the actions of the Circus as they unloaded the elephants and horses from the circus

18   train and walked the animals to the Oakland Arena. DEFENDANT RUBY KAZI was also

19   present during this animal walk.

20        48     Although Ringling Bros. Circus did not possess a permit from the City of Oakland

21   to conduct an animal walk, block off the public street and interfere with pedestrian traffic, they

22   did so anyway, in violation of the local Municipal ordinances.

23        49     During the course of the animal walk, which occurred on the public street,

24   PLAINTIFF followed the animal walk by walking on the public sidewalk and the curb of the

25   public sidewalk as Circus employees held a rope alongside the elephants on both sides of the

26   elephants. During this animal walk, for the first time ever, DEFENDANT RINGLING, or their

27   attorneys from McManis Faulkner, had hired two professional videographers to follow and video

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  monitor Plaintiff during the animal walk. One videographer continually followed PLAINTIFF

2  CUVIELLO and one videographer continually followed another activist, Mark Ennis. These

3  professional videographers filmed PLAINTIFF, and the other activists not only on this animal

4  walk but also while PLAINTIFF, and other activists, was leafleting the circus patrons and

5  videotaping the circus' treatment of animals during DEFENDANT RINGLING'S engagements

6  at the Oakland Arena in Oakland, California; the San Jose Arena in San Jose, California; the

7  Stockton Arena in Stockton, California; and the Arco Arena in Sacramento, California.

8        50     Under the supervision of DEFENDANTS MIKE STUART and DAVID

9  BAILEY, the employees, including Henry Higinio, walked right up next to the sidewalk curb

10  and were pushing the rope and their bodies up against PLAINTIFF, assaulting and battering

11  Plaintiff and interfering with his right to freely access the sidewalk and videotape the Circus'

12  treatment of the animals. Plaintiff repeatedly pushed the rope off of himself and told the

13  employees to stop touching him and to get the rope off of him. Circus employees also used the

14  ropes and their bodies to attempt to block Plaintiff from entering onto the arena property, which

15  was open for entering and exiting of ball game patrons and for which Plaintiff had a federal

16  Court injunction protecting his right to access the arena property for videotaping purposes.

17        51     At one point during the animal walk PLAINTIFF heard his partner Deniz Bolbol

18  loudly telling Circus rope holder Lorenzo DelMoral, who was pushing Ms. Bolbol, that the

19  property is public property. PLAINTIFF stopped walking, turned around and from a standing

20  still position videotaped the rope holder pushing Ms. Bolbol, as both were walking towards

21  PLAINTIFF. When Ms. Bolbol and the employee reached PLAINTIFF'S standing still position

22  Ms. Bolbol walked around PLAINTIFF and the employee violently slammed his body into MR.

23  CUVIELLO. In self-defense, PLAINTIFF CUVIELLO used necessary force to push the Circus

24  employee off of him and was immediately surrounded by several Circus employees who were

25  yelling at him and pushing him. PLAINTIFF pushed the employees off of him and told the

26  employees to back off. At this point DEFENDANT MIKE STUART, Ringling's Director of

27

28
           **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1  Circus Operations, came over and told the Circus employees to back off and get on the other side

2  of the rope.

3       52    It appeared as if the Circus had intended to engage in activity to provoke Plaintiff,

4  and the other activists, and hired the videographers to capture Plaintiff's, and the other activists',

5  response to the provocation.

6       53    The conduct by Defendants was physically offensive and caused PLAINTIFF to

7  fear for his safety and the safety of his property. Defendants' actions created a dangerous

8  situation for Plaintiff and those in concert.

9       54    During the August 7, 2012 animal walk DEFENDANTS RINGLING BROS.

10  DIRECTOR OF CIRCUS OPERATIONS MIKE STUART and RINGLING BROS. BLUE

11  UNIT ASSISTANT GENERAL MANAGER DAVID BAILEY were supervising the Circus

12  employees who repeatedly used the rope and their bodies to assault and batter Plaintiffs and to

13  interfere with Plaintiffs' constitutionally protected right to videotape the Circus' treatment of the

14  animals during the walk. DEFENDANTS RINGLING BROS. DIRECTOR OF CIRCUS

15  OPERATIONS MIKE STUART and RINGLING BROS. BLUE UNIT ASSISTANT

16  GENERAL MANAGER DAVID BAILEY were aware that PLAINTIFF had filed a lawsuit

17  alleges a violation of his rights for similar behavior in Sacramento in 2009. DEFENDANTS also

18  understood that the rope holders were not permitted to push the ropes against the activists.

19  However, they purposely told their rope holding employees to hold the rope in their hand closest

20  to the sidewalk and to go as far out to the edge of the road as possible, knowing full well that that

21  would position the rope holders next to the curb with the rope over the curb and that if

22  PLAINTIFF and the other activists were walking on the curb the rope holders would be pushing

23  the rope on them. DEFENDANTS STUART and BAILEY also were aware that if the rope

24  holders pushed the rope on Plaintiff, and the other activists, it was likely to cause a problem.

25  However, even though the rope holders were pushing the rope against myself and other activists

26  DEFENDANTS STUART and BAILEY did nothing to stop them and in fact encouraged them

27

28                    COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1  by attempting to push and block the activists themselves and by ignoring Plaintiff's, and the

2  other activists', request to keep the rope off of them and to stop blocking and pushing on them.

3          55      Between August 8-12, 2012, Plaintiff, and those in concert, was in close

4  proximity to the Circus employees while leafleting and videotaping the treatment of animals.

5  There were no problems reported against Plaintiff, or any other activist, during these five days.

6          56      On August 13, 2012, the Circus moved to San Jose and Plaintiff was in close

7  proximity to the Circus employees as they were setting up the animal compound in the back

8  parking of the San Jose Arena. Plaintiff had travelled to the arena with other activists, including

9  Sherisa Andersen and Shani Campbell, to videotape the unloading of the elephants and horses

10  from the train, which in previous years occurred just a block away. Plaintiff had arrived early in

11  the morning and by 3 pm it became apparent to Plaintiff and those in concert that the Circus was

12  going to unload the elephants and horses in a different area. At this time Plaintiff asked Ms.

13  Campbell and Ms. Andersen to go get their cars and park them near the back of the arena so they

14  could be prepared to follow the circus trucks if they left the arena.

15          57      Although Ms. Campbell's car was parked just a block away, Ms. Andersen had

16  parked her car at the CalTrain station on Cahill Street across from the front of the arena, which

17  was over a quarter of a mile away. As Ms. Andersen was retrieving her car the circus trucks

18  pulled out of the arena back parking lot. Plaintiff directed Ms. Campbell and her boyfriend to

19  follow the trucks and informed Ms. Campbell that Plaintiff and Ms. Andersen would depart as

20  soon as she arrived and that they would call Ms. Campbell to get directions on where the trucks

21  were headed. About 20 minutes after Ms. Campbell's departure, Ms. Andersen arrived and

22  Plaintiff informed her of the plan. Ms. Andersen and Plaintiff called Ms. Campbell and received

23  initial instructions on the route the circus trucks were taking.

24          58      The circus trucks ended up travelling approximately 8.2 miles to the train depot at

25  the end of West Curtis Avenue in Milpitas, California. Although Ms. Andersen and Plaintiff

26  received periodic updates from Ms. Campbell on the truck route, Ms. Andersen and Plaintiff did

27  not see the trucks until Ms. Andersen stopped at the Main Street and Curtis Avenue stoplight,

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

11

1   approximately .34 miles from the train depot destination. At this point Ms. Andersen and

2   Plaintiff could see the back of one of the trucks up ahead. While stopped at the light, Plaintiff

3   noticed DEFENDANT DAVID BAILEY, driving a truck with a horse trailer, turn right onto

4   Curtis Avenue from Main Street. By the time Ms. Andersen and Plaintiff reached the end of

5   Curtis Avenue the trucks, including David Bailey and his horse trailer, were already in the train

6   depot.

7          59      Plaintiff videotaped the unloading of some of the elephants and horses from the

8   train and onto the trucks. As Plaintiff and Ms. Andersen were getting ready to head back to the

9   arena to videotape the Circus unload the animals from the trucks Ms. Andersen was stopped by a

10  Milpitas police officer who told her that DEFENDANT BAILEY had accused her and Ms.

11  Campbell of reckless driving by following to closely to the trucks as they travelled from the San

12  Jose Arena to Milpitas. The police held Ms. Andersen and Ms. Campbell for approximately one

13  and a half hours before releasing them without citing them. They were released just as the Circus

14  trucks returned to load-up the rest of the elephants. The detainment effectively prevented

15  Plaintiff, Ms. Andersen and Ms. Campbell from videotaping the Circus unloading the elephants

16  and horses at the San Jose Arena.

17         60      There were no problems reported against Plaintiff during on August 13, 2012.

18         61      Between August 7-13, 2012, not one Circus employee acted as if they feared

19  Plaintiff as they freely and casually walked by Plaintiff while they were handling animals and

20  when they were not.

21         62      On August 14, 2012, early in the morning, Plaintiff received notice from Ms.

22  Bolbol's attorney, G. Whitney Leigh, that DEFENDANT FELD had filed petitions for a

23  workplace violence restraining order (TRO) against respondents Plaintiff, Ms. Bolbol and Ms.

24  Andersen based on the August 7, 2012 animal walk in Oakland and that there was a hearing

25  scheduled on the petition at 9 am that morning. DEFENDANT KAZI, in her declaration in

26  support of the petition, claimed that the urgency of the petition was based on the August 13,

27  2012 reckless driving claim against Ms. Andersen and Ms. Campbell. DEFENDANTS STUART

28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1  and BAILEY also submitted declarations in which they both stated they were concerned for their

2  safety. DEFENDANT BAILEY's declaration contained outright lies regarding Plaintiff, Ms.

3  Andersen and Ms. Bolbol. DEFENDANT FELD also submitted a disc containing video excerpts

4  of the August 7, 2012 animal walk in Oakland.

5        63      During the TRO hearing DEFENDANTS KAZI and MCMANIS were present and

6  DEFENDANT MCMANIS argued DEFENDANT FELD's case for the issuance of the TROs.

7  The presiding judge, the Honorable Judge James Stoelker, refused to view the video or allow

8  Plaintiff and Ms. Bolbol to testify. Judge Stoelker issued the TROs based solely on the

9  declarations submitted by DEFENDANTS STUART and BAILEY. The TRO required all

10 respondents to stay five yards away from any Circus employee and when driving maintain a

11 distance of one car length for every ten mph from all Circus vehicles. The driving requirement

12 was issued against Plaintiff and Ms. Bolbol even though there was no claim against them for

13 reckless driving. Additionally, there was no court reporter present during this hearing.

14       64      That evening respondents filed a motion to dissolve the TROs and submitted their

15 own declarations and video of the August 7, 2012 animal walk in Oakland. Plaintiff also hired a

16 court reporter to record the hearing before Judge Stoelker on August 15, 2012. Judge Stoelker

17 again refused to view the video evidence and essentially told Plaintiff that he should view the

18 TRO as a big yawn and a "so what." Judge Stoelker essentially told Plaintiff that because he was

19 opposing the issuance of a TRO Plaintiff must be guilty, and refused to dissolve the TROs.

20       65      The trial to decide whether to transform the TRO into a permanent injunction was

21 scheduled for September 4, 2012.

22       66      During the Circus' engagement at the San Jose Arena from August 15-19, 2012,

23 the TRO severely interfered with Plaintiff's free speech activity. Due to the restrictions of the

24 TRO Plaintiff was not able to freely engage in his free speech activities in the normal manner in

25 which he had in the past 20 years, and which other activists were freely able to engage in.

26       67      Plaintiff could not leaflet where he wanted at the front entrance of the San Jose

27 Arena due to the presence of a Circus vendor. This vendor was particularly obnoxious and had

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1    his amplifier turned up loud. Each time PLAINTIFF CUVIELLO attempted to offer patrons a

2    leaflet by asking them if they would like information about how Ringling treats the animals, the

3    vendor would start his spiel effectively drowning out PLAINTIFF'S voice. Ordinarily, in such a

4    situation, PLAINTIFF would have stood near the vendor or the entrance to avoid the

5    loudspeaker. However, PLAINTIFF was not allowed to get within 15 feet of the vendor and

6    there was not 15 between the vendor and the entrance. Therefore Mr. Cuviello was forced to

7    stand at least 15 feet in front of the vendor and his speech could not be heard.

8        68    Additionally, in San Jose Ringling houses the animals in the back parking lot and

9    walks them from the lot to the arena and back during each show. Typically during these walks

10   Plaintiff walks on the sidewalk and uses his video camera to monitor the treatment and condition

11   of the animals, which are in close proximity. However, because a wall borders the sidewalk, the

12   distance can fluctuate depending on the movement of the elephant handlers in the street. Plaintiff

13   was concerned that he might be held in contempt of the TRO if there was not actually 15 feet

14   between the elephant handlers in the street and his place on the sidewalk, or if the handlers

15   moved closer to the sidewalk narrowing the distance to less than 15 feet, or if there was an

16   employee on the sidewalk who approached within 15 feet of Plaintiff. Accordingly, Plaintiff did

17   not want to risk being held in contempt and on August 15, 2012 Mr. Cuviello, out of fear of

18   arrest, instead was forced to stand in the upper parking lot, about 30-40 feet away from the

19   animal walk.

20       69    While videotaping from the parking lot Plaintiff was required to use a zoom shot,

21   which is a much harder shot to maintain a steady position while walking. Plaintiff also could not

22   see the elephants as well from the distance of the parking lot and therefore, could not scan their

23   bodies for scars or blood. Plaintiff also could not see the details that he would normally look for

24   – including but not limited to the eyes of the elephants or the handlers' actions. The greater the

25   distance from the animals the more difficult and worse  quality the videotaping.

26       70    Plaintiff was also in fear of how the San Jose police might decide to enforce the

27   TRO. Plaintiff was unclear if the stay away order required him to move away if a Circus

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1    employee approached him or if he could maintain his position. Plaintiff did not know if the

2    police would interpret the TRO 15 foot stay away order to mean Plaintiff had to move if an

3    employee came within 15 feet of him or not, so Plaintiff was forced to focus his attention on the

4    area he was occupying to spot an employee approaching before he came within 15 feet.

5         71      On August 16, 2012 Plaintiff decided, due to the bad vantage point of the parking

6    lot, he would walk on the public sidewalk and videotape the elephants as the Circus walked them

7    down the street, and risk being held in contempt. As the Elephants were walked out of the arena

8    back entrance Plaintiff was stationed about 30 feet from the entrance and was leaning on fire

9    hydrant. Plaintiff saw DEFENDANT STUART accompany the elephants out of the arena and

10   initially walk in the street, until he saw Plaintiff. At that point DEFENDANT STUART, who

11   submitted a declaration stating he didn't feel safe around Plaintiff, made a beeline towards

12   Plaintiff and Plaintiff remained stationary as STUART passed by. At this point DEFENDANT

13   STUART walked briskly up to where Ms. Bolbol was walking on the sidewalk and walked

14   within feet of her as she travelled down the sidewalk, despite submitting a declaration that he

15   was afraid for his safety around Ms. Bolbol.

16        72      Although Plaintiff did walk down the sidewalk, due to the restraints of the TRO,

17   Plaintiff was more focused on monitoring where the Circus employees were than actually

18   videotaping the elephants.

19        73      On August 17, Plaintiff and Ms. Bolbol decided to ask the San Jose police officer

20   in charge how he interprets the TRO and how he intends to enforce the TRO. Ms. Bolbol talked

21   to Lieutenant Monahan, who told her that basically she is always in violation of the TRO but

22   unless she gets violent they are not going to enforce the stay away order, although the Circus was

23   pushing them to do so.

24        74      On August 28, 2012 DEFENDANT FELD filed a motion a to modify Plaintiff's

25   stipulated permanent injunction in his Oakland case. The injunction DEFENDANT FELD

26   fought vehemently to keep from being issued. DEFENDANT FELD's main argument for

27   modification was the issuance of the TRO against Plaintiff, Ms. Bolbol and Ms. Andersen. In

28

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

1   support of their motion DEFENDANT FELD submitted a disc with video excerpts of the August

2   7, 2012 animal walk.

3       75      On November 1, 2012, the court denied DEFENDANT FELD's motion to modify

4   Plaintiff's stipulated permanent injunction.

5       76      From September 5-9, 2012 Ringling performed in Sacramento. Plaintiff would

6   usually travel to Sacramento to videotape the unloading of the animals from the train and the

7   subsequent two to three mile walk to the arena. However, due to the TRO hearing being schedule

8   at this time Plaintiff could not attend the animal walk. Plaintiff considered attending the load-up

9   animal walk on Sunday the 9th but due to the logistics of the street the animal walk would follow

10  Plaintiff believed he would not be able to stay within the confines of the TRO Order and was

11  concerned how the Sacramento police might interpret and enforce the TRO.

12      77      The trial regarding transforming the TRO into a permanent injunction began on

13  September 4, 2012 with the Honorable Judge Mary Greenwood presiding. During his September

14  4, 2012 testimony DEFENDANT BAILEY testified that he turned all of his video over to

15  DEFENDANT FELD'S attorneys. DEFENDANT BAILEY's video was never submitted as

16  evidence by DEFENDANTS FELD, MCMANIS, KAZI, ATKINSON OR WARD.

17      78      On September 18, 2012, after viewing evidence and hearing testimony from both

18  sides the Honorable Judge Mary Greenwood dismissed the TRO against Plaintiff.

19      79      On October 23, 2012, the federal court in Plaintiff's Oakland case ordered

20  DEFENDANT FELD to produce all the video in their possession of the August 7, 2012 animal

21  walk, which Plaintiff received on October 24, 2012. After receiving this video Plaintiff realized

22  that DEFENDANT FELD had withheld video evidence that discredited their own witnesses and

23  established that Defendants had no probable cause to file a petition for a workplace violence

24  restraining order against Plaintiff, Ms. Bolbol or Ms. Andersen. The withheld video also

25  establishes that DEFENDANTS knew they had no probable cause to support their accusations.

26      80      At all material times Plaintiff acted lawfully and never threatened or interfered

27  with the employees or business of Feld Entertainment Inc.

28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

81    In acquiring a TRO against Plaintiff, Defendants intentionally interfered with Plaintiff's Free Speech Rights with the intent to interfere with and chill Plaintiff in the exercise of his Constitutionally-protected rights.

82    Based on the history between Plaintiff and Defendants, Defendants had no probable cause to believe any Circus employee would have suffered irreparable harm without a restraining order against Plaintiff.

83    As a direct and proximate result of each Defendants' conduct, Plaintiffs suffered embarrassment, humiliation, mental suffering and emotional distress.

84    The emotional distress suffered by Plaintiff as a result of having a TRO issued against him has been lasting and severe and has only been compounded and exacerbated by DEFENDANT FELD's policy of consistently and illegally targeting Plaintiffs' free speech activities for years—well over 20 years. DEFENDANT FELD's use of harassment and intimidation against Plaintiff, including acquiring a TRO against him as a means to "chill" or prevent lawful free speech activity, amounts to extreme and outrageous conduct. It is made only more extreme and outrageous given DEFENDANT FELD's long history of harassment and intimidation.

85    The conduct of the Defendants was intentional, malicious and oppressive.

## FIRST CAUSE OF ACTION
## MALICIOUS PROSECUTION
### (Against All Defendants)

86    Plaintiff incorporates the allegations contained above as though fully set forth herein.

87    The Underlying Action was commenced by DEFENDANT FELD as part of an ongoing malicious retaliation campaign against Plaintiff for exercising his free speech rights, for filing lawsuits that result in the protection of his free speech rights and for effectively advocating against the Circus' use of animals. The Underlying Action was commenced by DEFENDANT FELD as part of an ongoing malicious retaliation campaign against Plaintiff meant to interfere

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1  with and chill Plaintiff's free speech rights. The Underlying Action was commenced by

2  DEFENDANT FELD as part of an ongoing malicious retaliation campaign against Plaintiff to

3  defame Plaintiff in the eyes of local law enforcement.

4        88     The Underlying Action was commenced by or at the direction of each of the

5  Defendants. The Defendant attorneys were DEFENDANT FELD's attorneys of record in the

6  Underlying Action. The Defendant attorneys acted on behalf of DEFENDANT FELD in the

7  Underlying Action to assert meritless claims against PLAINTIFF CUVIELLO.

8        89     The Defendants lacked probable cause to assert each of the claims against

9  Plaintiff in the Underlying Action. The Defendant attorneys, in particular, filed the Underlying

10  Action despite the fact that no reasonable attorney would have thought the claims against

11  Plaintiff to be legally tenable under California Code of Civil Procedure 527.8.

12        90     DEFENDANTS STUART and BAILEY took an active part in the

13  commencement of and the continuation of the Underlying Action for the improper purpose of

14  aiding and abetting their employer DEFENDANT FELD in its ongoing malicious retaliation

15  campaign against Plaintiff.

16        91     As a result of the malicious prosecution Plaintiff was obliged to defend himself

17  and to expend money and time in his defense. Plaintiff lost time from the ordinary pursuits of life

18  and home, and the quality of Plaintiff's life was diminished by it, all causing damage to Plaintiff.

19        92     As set forth above, the Defendants' conduct was done knowingly, willfully and

20  with malicious intent, and Plaintiff is entitled to punitive and exemplary damages in an amount

21  to be determined by proof at trial.

22        93     As a direct and proximate result of Defendants' malicious prosecution, Plaintiff

23  sustained injuries and damages as set forth above. Further, Plaintiff claims all damages and

24  penalties allowed by law, including costs and punitive damages.

25      ///

26      ///

27      ///

28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

## SECOND CAUSE OF ACTION

## 42 U.S.C. § 1983

## VIOLATION OF FIRST AMENDMENT RIGHTS

### (Against All Defendants)

97.     Plaintiff incorporates the allegations contained above as though fully set forth herein.

98.     Defendants' conduct was extreme and outrageous when they intentionally, knowingly, maliciously and willfully lied to obtain a temporary restraining order against Plaintiff which interfered with and chill his free speech rights, rights which Plaintiff had fought to have upheld and protected by court injunctions.

99.     As a direct and proximate result of Defendants' violation of Plaintiff's rights Plaintiff sustained injuries and damages as set forth above. Further, Plaintiffs claim all damages and penalties allowed by law, including costs and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.     For compensatory damages against each Defendant in accordance with proof;

2.     For punitive damages against each Defendant in accordance with proof:

3.     Costs of suit; and

4.     Such other and further relief as the court deems appropriate.

Dated: October 24, 2013

BY: _____
JOSEPH CUVIELLO
IN PRO SE

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**

19